---

(No. 11558.—Reversed and remanded.)
C. E. PETERSON & Co. Plaintiff in Error, *vs.* THE INDUSTRIAL BOARD OF ILLINOIS *et al.* Defendants in Error.

*Opinion filed December 19, 1917.*

1. WORKMEN'S COMPENSATION—*award of compensation must be sustained by competent evidence of accidental injury arising out of employment.* To sustain an award of compensation by the Industrial Board there must be some competent evidence of an accidental injury to the employee arising out of and in the course of his employment, and a liability to pay such compensation cannot rest upon imagination, speculation or conjecture or upon a choice between two views equally compatible with the evidence.

2. SAME—*what does not show that injury arose out of and in course of employment.* Evidence that an employee seventy years of age, and who had been suffering for several years from varicose veins, was found wandering about the shop in an apparently sick and dazed condition after the shop had closed, and that he insisted on going home alone on a street car, transferring twice be-

fore reaching his home, where it was found he had a broken collar bone, which he explained by saying he fell over some lumber in the shop, does not show that the injury arose out of and in the course of his employment.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

ADAMS, CREWS, BOBB & WESCOTT, for plaintiff in error.

CHARLES C. SPENCER, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Henry Knaak died on December 6, 1914, and on the application of his administrator a committee of arbitration made an award under the Workmen's Compensation act against C. E. Peterson & Co. which the Industrial Board sustained and the circuit court of Cook county on a writ of *certiorari* confirmed. This writ of error is prosecuted by C. E. Peterson & Co. to reverse the judgment.

The deceased, who was seventy years old, had worked for Peterson & Co. for several years running a coring saw, and his place of work was on the second floor of its factory. His last day's work was done on November 23, 1914, and the claim of his administrator is that he received an injury on that day arising out of and in the course of his employment which caused his death. He was in general good health but had suffered for several years from varicose veins and six or seven years before had been operated upon but without getting relief, and he had an open sore on his leg. On November 23 he was not well, was slow with his work, had no appetite and threw his lunch away. Work stopped at the factory at a quarter past five o'clock and the lights were turned off at half-past five. Knaak did not leave with the rest of the men. A few minutes after work stopped he was seen washing at a sink. There were some pipes lying on the floor near his saw. About a half hour

later the night watchman found him wandering on the second floor, apparently sick and dazed and unable to speak. He did not answer the watchman's questions why he had not gone home and whether he was sick. There was a back stairway which went down outside the building, and the watchman helped him to that and part way down, when Knaak jerked his arm and said, "Leave me alone." The watchman left him alone, telling him to hold the railing and walk slowly and holding the light for him to see the steps. However, Knaak fell when he got upon the last step but not hard. The watchman called assistance and Knaak was helped to his feet. He said it was not necessary to take him home; if they would bring him the right car he would get right on and go home. When he came out of the alley his attention was called to his shoes, which were unlaced, and he tried to lace them but looked as if he would fall over, and his companion laced them for him, Knaak saying, "Hurry up; the car is coming." He got on the car without assistance, pulling himself up by both hands. He went home alone, the trip involving two transfers, and arrived about eight o'clock. His clothes were covered with dust and he was pale. His son asked him what was the matter, and he said, "The lights were out in the shop and I stumbled and fell over some lumber." The deceased remained in bed in a semi-conscious condition until December 6, when he died.

The jurisdiction of the Industrial Board extends only to accidental injuries to an employee arising out of and in the course of his employment, and to, sustain an award of compensation competent evidence is necessary fairly tending to show that the employee has received an injury of that character. (*Armour & Co.* v. *Industrial Board*, 273 Ill. 590; *Victor Chemical Works* v. *Industrial Board*, 274 id. 11; *Chicago and Alton Railroad Co.* v. *Industrial Board*, id. 336.) It is proved in this case that Knaak had a broken collar-bone, but there is no evidence tending to show when, where or how he got it, except that it was probably between

five and eight o'clock in the evening of November 23, 1914.
If it be assumed that he stumbled and fell over some lumber in the shop, there is no more cause for supposing that
his dazed mental condition resulted from the fall than that
the fall resulted from his mental condition, but less.  A man
in a dazed mental condition might, because of it, fall and
break a collar-bone, but the falling and breaking a collar-bone would not be likely to produce the dazed mental condition.  So evidence of the discovery of the deceased a half
hour after the shop closed, in a dazed state, with a broken
collar-bone, would have no tendency to prove an injury arising out of and in the course of his employment.  A fall
resulting from a dazed mental condition arises out of the
condition and not out of the employment.  (*Milliken* v.
*Towle,* 216 Mass. 293.)  But the deceased was not so found
with a broken collar-bone.  There is no evidence of a
broken collar-bone until much later.  Counsel for both parties agree that the fall at the foot of the stairway was insufficient to account for the broken collar-bone.  There is
no evidence as to what occurred on the street car ride of
more than an hour, involving two transfers, between the
factory and the deceased's home.  The coroner's jury made
no finding as to where the supposed fall occurred.  Their
verdict is only that they did not know whether the fall occurred on the second floor or from the bottom step of the
stairs.  It is a finding that the jury did not know where the
fall occurred and is not a finding that it did occur at one
or the other of those places.

The surmise of counsel for the administrator is that
after the deceased quit work and had washed he was going to the locker to change his clothes and fell over the
pipes on the floor, receiving injuries which resulted in his
death.  It may be surmised with as much reason that he
remained, after the others had gone, to rest a few minutes
and was seized with a vertigo which made him fall, or that
his physical weakness by reason of sickness and going all

day without food caused him to fall in the shop or at the foot of the stairs or on the way home. Any of these suppositions is as consistent with the evidence as any other and all are mere conjecture. Liability cannot rest upon imagination, speculation or conjecture, upon a choice between two views equally compatible with the evidence, but must be based upon facts established by evidence fairly tending to prove them.

The judgment will be reversed and the cause remanded to the circuit court, with directions to set aside the award:

*Reversed and remanded, with directions.*