(No. 18171.—Judgment reversed and award set aside.)
LIBBY, McNEILL & LIBBY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(FANNIE B. REDDICK, Defendant in Error.)

*Opinion filed June 22, 1927.*

1. WORKMEN'S COMPENSATION—*burden is on claimant to prove accidental injury in course of employment.* Liability in compensation cases cannot be predicated upon mere conjecture or upon proof equally compatible with the theory of the claimant or of the employer, but the burden is on the claimant to establish the right to an award by proving an accidental injury in the course of the employment.

2. SAME—*when proof does not establish right to an award for death due to pneumonia.* The right to an award of compensation for death due to pneumonia is not established where there is no evidence of an accidental injury, notwithstanding the statement of the employee is admitted without objection that he was squeezed between two men while at work, the attending physician, as well as the physician who conducted a post mortem, testifying that there were no marks of pressure or violence on the body sufficient to cause hemorrhage and pneumonia.

DEYOUNG, J., took no part.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding.

THOMAS M. COEN, and J. B. HUGG, for plaintiff in error.

DENISON, WATKINS & WHITE, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This court allowed the petition of Libby, McNeill & Libby for a writ of error to review a judgment of the superior court of Cook county confirming an award of the Industrial Commission in favor of Fannie B. Reddick, the mother of Currie Reddick, on account of Mrs. Reddick's claim that her son received an accidental injury on June 25, 1925, from which pneumonia developed, causing his death July 3, 1925.

Currie Reddick was nineteen years old and resided with his father, mother and younger members of the family. On the 25th of June, 1925, Reddick, in company with four other men, worked for plaintiff in error from 7:30 A. M. for more than an hour unloading hogsheads of olives from cars, the hogsheads being four and one-half feet high by two and one-half feet in diameter and weighing from 1500 to 1800 pounds. Deceased worked at other employments the balance of the day after completing the unloading of the hogsheads and checked out at five o'clock in the evening. He did not return to work the next day, but his brother-in-law telephoned plaintiff in error's timekeeper that Reddick had been hurt at the plant the day before and asked that the nurse be sent to Reddick's home. Inquiry was at once made at the plant, but there was no record of any accident and employees questioned could give no information. The nurse called at Reddick's home, and in conversation with her he said he had been hurt the day before while unload-

ing olives—that he had been squeezed between two men. No objection was made to the nurse stating what Reddick said about being hurt. The nurse testified Reddick asked her to send plaintiff in error's doctor to see him. Dr. Lally was sent on behalf of plaintiff in error on June 27 to call on Reddick. He testified Reddick was a very sick man, with pneumonia, but he could find no marks of violence. He treated Reddick until his death. He had him removed to a hospital. July 14 Fannie B. Reddick filed an application for adjustment of claim on the ground of dependency. The application was heard by an arbitrator, and on October 1, 1925, he filed a decision that the petitioner was not entitled to compensation, for the reason that her son did not receive an injury while in the employ of plaintiff in error on June 25 which caused his death. The claim was reviewed by the Industrial Commission, and the commission filed a decision that the deceased sustained an accidental injury which resulted in his death on July 3, and that his mother, Fannie B. Reddick, was at the time of the injury dependent upon him for support and made an award to her of $9.90 per week for 166⅔ weeks. The cause was removed to the superior court of Cook county by *certiorari* and that court confirmed the award. This writ of error was sued out to review the judgment of the superior court.

But two questions are presented for decision: (1) Did Currie Reddick receive an accidental injury June 25 while in the employ of plaintiff in error which caused his death? (2) Was the mother of deceased dependent upon him?

The claimant, Reddick's mother, testified her son went to bed immediately on returning home on June 25, about 5:30 o'clock. He was spitting blood and complained of his side. He was well when he left home in the morning. Plaintiff in error's physician visited him a day or two afterwards and attended him through his illness. At the end of nine days he was taken to a hospital. Her son gave his money to her and had been supporting her two years. He

quit school to help his father and to support her. She used the money for his expenses and for her and the younger children's expenses. On cross-examination she testified she resided with her husband, who was employed in the post-office. Before employment there he worked at the Malleable Steel Works. She said he had a very good job, maintained the family and supported her ever since they were married. He supported the children but she did not get very much herself. He had been good to her and turned his money over to her, but debts and obligations took more than he made. Her son had worked for plaintiff in error about two weeks before she claims he was injured. Before that he had worked for other employers. He lived and slept at her house. He paid no room rent. She and her husband were buying some property, and the money her husband gave her went to meet payments for the property and to buy food and clothing for the little children. They were buying two pieces of property in Morgan Park. The witness put in the bank the money her husband gave her and he checked it out to pay on the property. The money her son gave her was used for personal benefits and for the support of the little girls. That was done because it left her husband's money free to be applied on payments for the real estate.

The proof shows that the men unloaded four cars of hogsheads, commencing about 7:30 A. M., and were so engaged more than an hour. The hogsheads stood on end in the cars and to remove them it was necessary to turn them over on their sides. Two men pushed from behind and Reddick and two others stood in front and pulled, with their arms extended straight out from the shoulders. When a hogshead started to overturn they stepped back to allow it to fall on its side. Reddick worked between two other men, standing shoulder to shoulder with them, and pulled on the hogsheads to lower them to their sides. Earl Campbell, who was one of the two that pushed the hogsheads

over, testified before the arbitrator and described how the work was done, and said while they were unloading the third or fourth car Reddick frowned and appeared as if he was hurt or sick. The witness testified he and Reddick lived about two blocks apart; that the evening of June 25 he and Reddick got on the same street car at the Libby plant and when they got off they walked home together, and that no accident occurred to Reddick as they were going home.

Frank Modzeleski testified he was working and standing by the side of Reddick in unloading the hogsheads and an employee named Moore was on the other side of Reddick. He described how they would press their shoulders against each other in performing the work. He testified he did not squeeze Reddick, so far as he knew, and that Reddick did not make any complaint of having been squeezed. The arms of the three men in front of the hogsheads were extended straight out in doing the work and their shoulders were not near Reddick's sides. Much of the time they were so far apart that they hardly touched each other.

Orange Moore testified he worked alongside of Reddick, who was in the center of the three in front of the hogsheads. He said sometimes their shoulders touched. Their arms were stretched out straight from the shoulders, and they would step back as a hogshead came over. Reddick didn't get hurt while working with the hogsheads, to his knowledge. He never complained to the witness, and witness said he didn't squeeze him at any time.

Linda Crow testified she was timekeeper for plaintiff in error. She was called on the telephone June 26 by Reddick's brother-in-law and told that Reddick was hurt the day before at the plant and asked if they would send the nurse out. She said they had received no report of the accident and could find no one that knew of it. The superintendent spoke to Miss Rotz about going down to Reddick's house. Miss Rotz testified she went to Reddick's

house about one or two o'clock in the afternoon. He was in bed, had been spitting blood, and claimed he got hurt the day before. He said he got squeezed between two men unloading hogsheads. No objection was made to this testimony, according to the abstract. Miss Rotz returned to plaintiff in error's plant, reported to the superintendent, and he instructed her to send Dr. Lally to see Reddick.

Dr. Lally testified he was the company's physician and treated Reddick from June 27 until he died with pneumonia. He was present when Dr. Springer made the post-mortem examination. No injuries in the way of bruises or broken ribs were found. The left lung was consolidated and part of the right lung. He examined the exterior of Reddick's back and there were no marks of violence. The doctor's diagnosis was lobar pneumonia. There was considerable hemorrhage on either side of the chest wall, on the inside. That could be due to an injury or to lobar pneumonia itself. There were no contusions of any of the viscera and no marks of any violence on the body. The hemorrhage under the ribs might be caused by injury and might be caused by some other condition. There was no evidence of injury on either side. The condition could have been caused by extreme pressure applied in the vicinity where the blood spots were found.

Dr. Springer testified he was the coroner's physician and made a post-mortem on the body of Reddick July 4. He found no marks of violence on the body. On opening the body it was found the left lung was consolidated and a part of the right lung. There was an extravasation of blood under the pleura, close down to the spine, on both sides of the chest. The hemorrhage was caused by some pressure effect against the posterior part of the body. Reddick died from lobar pneumonia. The hemorrhage could not result from anything except external force or injury. The whole left lung was consolidated and an extension of the inflammation over into the right lung. The extravasation of

blood was close to the spine, on the inside of the chest, underneath the pleura. The condition would be caused by an extreme force. It would require considerable force to bring about the condition the doctor found.

The burden of proving the deceased received an accidental injury in the course of his employment rested upon the claimant. (*Chicago and Alton Railroad Co.* v. *Industrial Board,* 274 Ill. 336; *Chicago Daily News Co.* v. *Industrial Com.* 306 id. 212; *New Staunton Coal Co.* v. *Industrial Com.* 307 id. 408.) Two of three witnesses who worked with the deceased at the time it is claimed the injury was received do not support the claim of an accidental injury. One of the men who pushed the hogsheads over testified that while they were unloading, Reddick frowned and appeared as if he were hurt or sick. He made no mention of having been hurt or being in pain or distress. The proof shows the immediate cause of death was lobar pneumonia, and the claim is based upon the contention that the pneumonia resulted from an accidental injury. Whether it did or not must depend mainly upon the testimony of the medical witnesses. Dr. Lally treated Reddick from the second day after he became ill until his death. On his first visit, the doctor testified, the patient was very sick with pneumonia. The doctor examined him for external marks of violence but found none. He testified the post-mortem showed considerable hemorrhage inside the chest wall on either side. That condition, he testified, could be due to an injury or to lobar pneumonia. There were no fractured ribs, no contusions of any of the viscera and no marks of violence on the body. If the spots of blood or hemorrhage under the ribs was caused by an injury the injury would have to be received in the vicinity of the spots, and no marks indicated an injury. Reddick's condition could have been caused by extreme pressure, but the pressure would have to be applied in the vicinity where the blood spots were found. Dr. Springer, who conducted the post-mortem,

testified there was hemorrhage under the pleura, close down to the spine, on both sides of the chest. That was caused by some pressure effect against the posterior of the body. It could not result from anything else except external force or injury. He said it would require considerable force to produce the condition he found. The testimony of Dr. Lally was that there were no marks of violence on the exterior of the body and no fractured ribs or contusions of the viscera and that the condition of hemorrhage found could be due to an injury or to lobar pneumonia. In that condition of the proof it cannot be said claimant proved, by a preponderance of the evidence, that her son received an accidental injury which caused his death.

The situation presented in this case is unlike that in such cases as *Lumaghi Coal Co.* v. *Industrial Com.* 305 Ill. 475, and *Kivish* v. *Industrial Com.* 312 id. 311, relied upon by defendant in error. In those cases there was no question that the employee did receive an accidental injury in the course of his employment. In the instant case it was not shown by a preponderance of the proof that the deceased received an accidental injury in the course of his employment. We have frequently decided that liability in compensation cases cannot be predicated upon mere conjecture or upon proof equally compatible with the theory of plaintiff in error or of defendant in error. The claimant must establish, by a preponderance of the evidence, a legal right to an award, the same as would have to be done under an attempt to establish a claim in an action at common law. "Liability cannot rest upon imagination, speculation or conjecture, upon a choice between two views equally compatible with the evidence, but must be based upon facts established by evidence fairly tending to prove them." (*Peterson & Co.* v. *Industrial Board,* 281 Ill. 326.) That rule has been many times approved in subsequent cases.

Counsel for defendant in error contend that when statements made by the employee about how the injury was re-

ceived are received in evidence without objection the evidence should be considered and given the same effect as if competent.   If the testimony of what Reddick said about receiving the injury is considered the same as if competent, we do not think it by any means furnishes a preponderance in support of the claim.   He may have honestly thought the condition which developed soon after unloading the hogsheads of olives was the result of being squeezed between the two men he was working with, but there is no proof of any squeeze of such violence as to cause the hemorrhage and pneumonia.   Besides, both doctors testified the violence or pressure would have to be in the vicinity where the hemorrhage occurred, which would naturally be well toward the back.   No such pressure could have been exerted there, and it seems impossible that a man on each side of the deceased, working with the arms extended straight out from the shoulders, could squeeze Reddick with such violence as to cause the very quick development of pneumonia and yet leave no marks of the violence either on the interior or exterior of the body.

We are of opinion the proof does not show that Reddick received an injury in plaintiff in error's employment which caused the pneumonia to set in from which he died. It is unnecessary, therefore, to consider the question whether his mother was dependent upon him.

The judgment of the superior court is reversed and the award set aside.

*Judgment reversed and award set aside.*

Mr. Justice DeYoung took no part in this decision.