(No. 18582.—Judgment reversed.)
JULIA RYAN, Conservatrix, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE COUNTY OF COOK, Plaintiff in Error.)

*Opinion filed February 24, 1928.*

WORKMEN'S COMPENSATION—*when evidence fails to show disability is due to injury in course of employment.* To sustain an award the evidence must fairly show that the employee in the course of his employment received an injury which caused the disability, and where all the expert testimony and the weight of the other evidence show the greater probability that the disability for which compensation is claimed has resulted from arteriosclerosis and not from an accidental injury in the course of the employment, an award of compensation is not justified.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. HARRY M. FISHER, Judge, presiding.

ROBERT E. CROWE, State's Attorney, (WILLIAM B. WALRATH, and HERBERT A. G. WEDEL, of counsel,) for plaintiff in error.

JAMIESON & JAMIESON, (THOMAS S. JAMIESON, of counsel,) for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This court granted a writ of error to review a judgment of the circuit court of Cook county making an award to the conservatrix of the estate of John Ryan, insane, who was employed by plaintiff in error.

329—14

In 1923 John Ryan was employed by plaintiff in error as a caretaker in the county morgue. October 14 of that year Ryan reported to Thomas Mahon, his immediate superior, that he had a sore foot. At Mahon's request he removed his shoe and sock and exhibited to him an inflamed toe. He told Mahon that it was caused by paring a corn on the toe. Mahon told him to go to Dr. Singer, at the Cook County Hospital, which is on the same grounds as the morgue, and ask Dr. Singer to take him to Dr. Meyer. Ryan did not do so. The next day after he exhibited his foot to Mahon he started on his vacation. October 17 he called at the office of Dr. Tharp, a physician in private practice, and the doctor treated him for about two weeks, during which time the inflammation cleared up except the end of the toe, which became gangrenous and turned black. On November 5. Dr. Tharp amputated about half of the toe at the John B. Murphy Hospital. November 12 he amputated about half of the foot. November. 14 he amputated the leg one-third of the distance below the knee, and on November 27, the wound not having healed satisfactorily, he sawed off the end of the bones and covered them with flesh. On some day subsequent to that operation a daughter of Ryan telephoned Mahon that her father's leg had been amputated below the knee and he would not be able to work for some time. Before the operations Ryan was all right mentally but afterwards became mentally incompetent. About December 7, 1923, Miss Ryan called on the warden of the Cook County Hospital and informed him her father was in the John B. Murphy Hospital, that his leg had been amputated, and their funds were exhausted. She asked the warden if they might bring her father to the county hospital, and he told her they could do so. On December 9 Ryan was removed to the Cook County Hospital and remained there until February 13, 1924.

An application for adjustment of claim, dated April 3, 1924, signed by John Ryan, was filed with the Industrial

Commission, which stated that he was injured October 7, 1923, in the course of his employment as caretaker at the morgue, by a box falling on his foot; that no medical, surgical or hospital treatment was furnished by plaintiff in error; that he earned $110 per month and no compensation had been paid by his employer. He claimed $14 per week for complete permanent disability and a pension for life. The claim stated that on October 17, 1923, he notified Thomas Mahon, head morgue keeper, his immediate superior. Notice was given by the Industrial Commission to plaintiff in error April 25, 1924, of the filing of the claim for adjustment. The cause was heard before an arbitrator, who made an award March 25, 1925, of $3750, payable in installments of $12.50 per week, and thereafter a pension for life at the rate of $25 per month. He also awarded the sum of $1579.35 for medical, surgical and hospital expenses. The Industrial Commission reviewed the award of the arbitrator and filed its decision September 29, 1926, finding that any disability from which Ryan was suffering was not the result of an accidental injury sustained October 7, 1923, arising out of and in the course of his employment, and reversed and set aside the award of the arbitrator. A writ of *certiorari* was issued from the circuit court to review the decision of the Industrial Commission, and the court reversed and set aside the order of the commission. It did not affirm the arbitrator's award, but made an award to the complainant of $12.50 a week for 175 weeks for the reason the injury sustained caused the permanent and complete loss of the use of his leg, and awarded the further sum of $1579.35 for first aid, medical, surgical and hospital services. At the final hearing before the arbitrator evidence was introduced that Ryan was insane, and that Julia Ryan, his wife, on January 31, 1925, had been appointed conservatrix, and she was substituted for him as claimant. Dr. Tharp testified that Ryan became irrational about November 13, 1923, and had been continuously in-

sane since that time; that prior to that day his mental condition had been good.

Plaintiff in error contends (1) that the disability of Ryan was not the result of an accident received in the course of employment; (2) that no notice was given the employer, as required by the Compensation act; (3) that no claim for compensation was made within six months, as required by the statute; (4) that the evidence does not support the judgment of the circuit court; and (5) that the parties were not under the Compensation act.

The only evidence of an accidental injury to Ryan was the testimony of Michael J. Braden. He testified he had been employed about four years in the morgue as caretaker and that he and Ryan were doing the same kind of work. He testified he and Ryan went down in the basement to pack bodies in boxes October 7, 1923; that they were carrying a box, and when they laid it down Ryan said it fell on his toe. This was objected to and the objection sustained. Witness testified he had hold of one end of the box and Ryan the other end. He was unable to tell on what day of the week the accident happened, but when asked on cross-examination how he knew the box fell on Ryan's foot he answered, "Because I saw it, sir." He testified he had heard Ryan complain of a sore foot prior to the day of the accident. Mary Quilty testified she was a cleaner in the county morgue, and that the last day Ryan worked there she noticed he was limping; that she had known Ryan for more than a year prior to October 23, 1923, and had seen him limping a good many times prior to October; that he complained of callouses or corns, and she had seen him take off his shoes "and fix his feet."

Dr. Tharp testified that when Ryan first came to him he gave him a physical examination and took his blood pressure. He could not remember what the blood pressure was, but did remember that it was a "little high for his age." He examined Ryan's arteries and found there was

some hardening. He testified further that after two weeks' treatment the infection of the toe cleared up except the end of the toe, which became gangrenous and turned black. He amputated the toe November 5, 1923. The infection crawled up the foot, and November 12 he removed about half of the foot. November 14 he amputated the leg below the knee, and November 22, as the leg had not healed properly, he performed the fourth operation, which was a slight one. December 7 the infection had entirely cleared up but Ryan's mental condition was bad. He began to fail mentally after the second operation. He testified a gangrenous condition sometimes arose from hardening of the arteries; that the anæsthetic given Ryan was gas and ether, and he came out of it very nicely. He gave it as his opinion that Ryan's mental condition was impaired on account of the injuries and the operations, and said it was permanent. It was agreed Ryan was sixty-two years old.

Thomas Mahon testified on behalf of plaintiff in error that he had been county morgue keeper thirty-three years and had known Ryan for two or three years. On the day before Ryan left on his vacation, in October, 1923, he came to witness walking lame and said he had a sore foot. He took off his shoe and sock and witness noticed he had an infected toe, and witness asked Ryan how it happened. Ryan said he was paring a callous or corn on his toe and "that is the result." Witness instructed him, as we have before stated, to go to Dr. Singer at the Cook County Hospital and have the doctor take him to Dr. Meyer, but he did not do so. The next thing the witness heard about him, Ryan's daughter telephoned witness her father had a part of his toe cut off and would not be able to return to work for some time.

Dr. Tharp testified that in his opinion Ryan was suffering from senile dementia, hastened by the shock of the operations, or infection.

Michael Zimmer, warden of the Cook County Hospital, testified Ryan's daughter came to him to inquire if they could bring Ryan to that hospital. This was the 5th, 6th or 7th of December, 1923. She said her father was at the John.B. Murphy Hospital and they had about reached the end of their resources. He told her they could bring her father to the hospital. He never heard anything about her father having been injured while working in the morgue or that his leg had been amputated, prior to the conversation with Ryan's daughter. He testified the services of the county hospital were charitable, and he did not consent to bringing Ryan to the hospital because he had been an employee in the morgue.

Dr. Meyer, a witness for plaintiff in error, testified he was a physician and surgeon, assistant warden of the Cook County Hospital and chief of the medical staff; that he had been there since 1914 and was engaged in the practice of medicine and surgery; that he remembered Ryan's admission to the hospital, which was on December 9, 1923; that witness personally supervised his case; that his diagnosis was that Ryan had senile dementia or arteriosclerotic dementia; that the patient was incompetent to give a direct history by questioning him; that he examined Ryan's arteries and found them hard—typical beaded arteries of a pipe-stem character; that they were hard—standing out; extremely hard. Witness testified that condition of the arteries frequently produces gangrene and is the cause of mental changes which occur in old people; that hardening of the arteries would account for both gangrene of the foot and mental failure at the same time; that it causes a slowing of the circulation of the blood, and may cause mental failure because the brain does not get sufficient nourishment to keep it in a healthy condition. In answer to a hypothetical question the doctor testified that in his opinion the gangrenous condition of Ryan's toe and foot existed because

he was suffering from arteriosclerotic gangrene, due to hardening of the arteries.

Dr. McNealy, a witness for plaintiff in error, testified he is a physician and surgeon on the staff of the Cook County Hospital; that he examined Ryan's arteries and found he had a very marked arteriosclerosis; that his mental failure and the cause of the gangrene were, in his opinion, due to arteriosclerosis. In answer to the same hypothetical question propounded to Dr. Meyer he stated his opinion was that the gangrenous condition was caused by the hardening of the arteries, and that the mental failure was caused by the same thing.

In the view we take of this case it will only be necessary to discuss one question. The proof fails to show that the disability of Ryan was caused by an accident received in the course of and growing out of his employment. It is true, the witness Braden testified he saw a box fall on Ryan's foot, but we are not impressed with that testimony in view of all the other evidence in the case. The proof shows Ryan had for some time had some affection of the foot which caused him to limp at times. On the day before his vacation began he showed his toe to Mahon, the morgue keeper, and told him its inflamed condition was the result of his paring a corn or callous on his toe. He made no complaint whatever of its having been injured by a box falling on it. The testimony of the medical witnesses is that he had hardening of the arteries, which caused senile dementia and gangrene of the foot. The physician Ryan went to of his own choice testified Ryan had some hardening of the arteries, which sometimes causes a gangrenous condition. We have repeatedly held that to sustain an award the evidence must fairly show that the employee received an injury in the course of the employment which caused the disability. In *Peterson & Co.* v. *Industrial Board,* 281 Ill. 326, the court said: "Liability cannot rest

upon imagination, speculation or conjecture, upon a choice between two views equally compatible with the evidence, but must be based upon facts established by evidence fairly tending to prove them." In *Springfield District Coal Co. v. Industrial Com.* 303 Ill. 455, the court said: "If death is fairly chargeable to an accident suffered in the course of the employment as an efficient cause compensation may be awarded, and the previous physical condition of the employee does not affect the right. So long as the injury sustained is the proximate cause of the incapacity or death, compensation is to be allowed although there was a pre-existing disease, if the disease was aggravated or accelerated by the accidental injury." In *Standard Oil Co. v. Industrial Com.* 322 Ill. 524, the court said: "The liability of an employer under the Compensation act cannot be based on a choice between two views equally compatible with the evidence but must be based on facts established by evidence, and where the cause of injury or death is equally consistent with an accident and with no accident, compensation will be denied." In the opinions above cited will be found numerous cases where the court has taken the same view.

The evidence in this case does not, as we have said, show that there was any accident received by Ryan to his foot, and all the medical evidence is to the effect that the gangrenous condition and the insanity were due to the hardening of the arteries. The case is an unfortunate one, but before the award of the circuit court can be confirmed it must be shown by competent evidence that the disability was due to an accident received in the course of and growing out of the employment. This the evidence fails to show.

The judgment of the circuit court is reversed.

*Judgment reversed.*