Percival B. Coffin, Administrator of the Estate of Dorothy E. Hollis, Deceased, Plaintiff in Error, v. Chicago City Railway Company et al., Defendants in Error.

Gen. No. 32,782.

Heard in the first division of this court for the first district at the June term, 1928. ▇▇▇▇ Opinion filed January 21, 1929.

James C. McShane, for plaintiff in error.

Brown, Fox & Blumberg, for defendants in error; Frank L. Kriete, Charles LeRoy Brown, A. R. Peterson and Henry Blumberg, of counsel.

Mr. Justice McSurely delivered the opinion of the court.

Plaintiff by this writ of error seeks the reversal of an adverse judgment entered upon a directed verdict in an action to recover compensation for the death of Dorothy E. Hollis, hereafter called plaintiff, by reason of the alleged wrongful operation and maintenance of a street car belonging to the defendants. The same accident also caused the death of Nellie K. Nahand, and the two cases were consolidated for hearing and tried at the same time. They have also been consolidated in this court for hearing. As there is virtually no difference in the facts relating to the two young ladies, respectively, what is said as to one also applies to the other.

Plaintiff asserts that the injuries received, causing death, were occasioned by the negligent overcrowding of the street car.

The accident happened about 5:35 p. m., June 11, 1926, in one of defendants' street cars on Cicero avenue which runs north and south in Cook county. The two young ladies with a number of other employees of the Western Electric Company, which is on Cicero avenue between 22nd and 26th streets, boarded the car in question and as the seats were all filled proceeded to the front end of the car and stood at about the middle of the partition which separates the front end of the car from the front platform. The car proceeded northward to about 16th street. At this point a truck was blocking the street car track and two or three cars were standing south of it. The car in question stopped and stood immediately behind the standing cars for a few minutes.

At the time plaintiff boarded the car and until the time of the accident there was an electrical storm of unusual violence with a severe rain. Some witnesses describe the storm as the worst within their recollec-

tion. During the storm the car on which plaintiff was riding was struck by lightning. There are two trolley poles on the top of the car about 30 feet apart. As the car was going northward the south pole was in contact with the trolley wire. These poles are connected by a wire which extends along the top of the car which is connected with another wire which extends along on top of the car to the corner post at the northwest corner of the car. There is a wire extending down this corner post to the bottom of the car which, in turn, was connected with the appliance by which the car was operated. The lightning struck the car at the base of the front trolley pole on the roof and apparently ran down through this wire into the wire on the corner post. It burned and melted much of the wiring on the front end of the car.

Almost at the same instant there was what is described as "a burst of fire" from the front partition where the plaintiff was standing. Witnesses describe these flames as "a streak of fire" or "a flash of flame" which seemed to come from the ceiling making the whole front end of the car apparently on fire. A witness who was standing near the front of the car described the occurrence after the crash thus: "The flames burst out very suddenly. They enveloped me. It seems the flames stretched out. * * * It was a flame that seemed to shoot out at me." This description is typical of the testimony given by witnesses regarding the flash of fire, indicating with certainty that the lightning stroke, the burning and melting of the wires and the flashes of fire were virtually a single, short phenomenon.

Within about a minute or so occurred what counsel for defendants describe as a second phase of the fire; this was caused by the conveyance of electrical current through the rear trolley pole, which was still connected with the trolley wire, into the front end of the car and

into the burned and disorganized wiring; this current would normally follow the wiring and propel the car, but, because of the burned and disorganized wiring it was diverted into the woodwork of the front partition, setting it on fire. An employee of defendants within one or two minutes thereafter pulled down the trolley pole, thus cutting off the current, leaving the wood in the partition smoldering, which continued until it was extinguished by a fireman a considerable time after the stroke of lightning.

The evidence gives no information as to when or how the two young ladies were burned. Many witnesses knew them and saw them on the car just before the lightning stroke. There is no evidence as to what subsequently happened to them except the evidence of physicians who later examined the burns on their bodies. The physician who examined Miss Hollis first saw her about 9:00 p. m. on the day of the accident. He said the burns were distributed over her entire body from her face to her feet. She lived eleven days thereafter. A physician first saw Miss Nahand at his office about two blocks from the scene of the accident. Her burns were also described as widely distributed from her face to her feet. She died eight days later. The evidence gives no information as to what was done by or with these young women in the interval between the stroke of lightning and the time they were examined by the physicians.

Plaintiff's declaration with an additional count was filed within one year of the accident and subsequently, after the year, was amended. Defendants assert that the declaration did not present the cause of action now relied upon until after the statutory period of limitation had run. The subsequent amendment merely amplified the previous declaration; it did not change the controlling allegation of defendants' negligence, and hence did not state a new cause of action.

Although the alleged overcrowding of the car is argued at some length, yet for the purpose of this opinion and in order to arrive directly at the decisive point in the case, we will assume that the evidence tended to show overcrowding. At least, it was a question of fact for the jury to determine.

It is obvious that defendants cannot be liable for injuries caused solely by the stroke of lightning. This is conceded. Neither is there any claim of negligence with reference to the equipment of the car. The position of plaintiff is that, admitting that the injuries immediately caused by the stroke of lightning may be ascribed to an act of God, yet the evidence tends to show that the overcrowded condition of the car concurred and mingled with the act of God as an active and co-operative cause of the injury which would not have occurred but for such negligence. This rule is supported by *Wald v. Pittsburg, C., C. & St. L. R. Co.,* 162 Ill. 545, where a passenger checked his trunk to be carried on the same train on which he was riding through Pennsylvania. By negligence of the railroad company the trunk was carried on a later train. The train on which the passenger was riding reached its destination in safety, while the later train carrying the passenger's trunk was caught in the famous Johnstown flood and destroyed. It was held there that if the carrier has been guilty of any previous negligence which brings the property in contact with the destructive force of the act of God, it is liable. Many other similar cases might be cited, such as *Sandy v. Lake St. El. R. Co.,* 235 Ill. 194; *Schwarz v. Adsit,* 91 Ill. App. 576; and others.

Undoubtedly this is the rule, but plaintiff's case is fatally defective in that there is no evidence from which the jury could reasonably find that plaintiff was burned by the fire which was caused by the contact of the trolley pole with the trolley wire and not solely

by the flames emanating from the lightning stroke. The theory on which liability is predicated is that the car was so overcrowded that plaintiff was pushed and held against the front partition so that she was unable to escape and remove her person from the burning partition; that as long as there is any evidence from which the jury might infer that plaintiff was injured by the second phase of the fire, because held in her position by the crowd, thus preventing her escape from the flames, it should have had the opportunity to so determine, although there are facts and circumstances which indicate with equal probability that the plaintiff received all her burns from the instantaneous lightning stroke.

There are certain expressions in some cases indicating that a wrongdoer may avoid liability by showing that the loss for which it is sought to hold him liable must necessarily have happened even though he had not been negligent, but it cannot avail him to show that the loss might have happened if he had not been negligent. 8 Am. & Eng. Encyc. of Law (2nd Ed.), p. 608. In *Reynolds v. Texas & P. Ry. Co.*, 37 La. Ann. 694, it is said that where the negligence greatly multiplies the chances of accident and is of a character naturally leading to its occurrence, the mere possibility that it might have happened without the negligence is not sufficient to avoid liability. It is argued with force that because of the overcrowded condition of the car in question the chances of escape by the plaintiff from the secondary fire were greatly lessened and that this condition naturally led to delay in avoiding the danger from this source and to the ultimate death of the plaintiff.

Whatever may be the law elsewhere, it is the rule in this state, established by a large number of decisions, that the existence of a certain fact cannot be reasonably inferred from the evidence when the existence

of another fact, inconsistent with the first, can be inferred from the same evidence with equal certainty; a fact cannot be established by circumstantial evidence unless the circumstances are of such a nature and so related to each other that it is the only conclusion that can be drawn therefrom.

"It cannot be said that the existence of a certain fact may reasonably be inferred from the evidence when the existence of another fact inconsistent with the first can be, from the same evidence, inferred with equal certainty. The evidence must point to the existence of some particular fact, rather than to the existence of another fact inconsistent with the first, before it can be said that such evidence alone tends to prove the existence of the first." *Chicago Union Traction Co. v. Hampe,* 228 Ill. 346.

Very pertinent to the instant case is the language of Mr. Justice Dunn in *Peterson & Co. v. Industrial Board,* 281 Ill. 326:

"Any of these suppositions is as consistent with the evidence as any other and all are mere conjecture. Liability cannot rest upon imagination, speculation or conjecture, upon a choice between two views equally compatible with the evidence, but must be based upon facts established by evidence fairly tending to prove them."

In *Neal v. Chicago, R. I. & P. Ry. Co.,* 129 Iowa 5, cited with approval in *Ohio Bldg. Safety Vault Co. v. Industrial Board,* 277 Ill. 96, the rule is thus stated:

"A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such nature and so related to each other that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent merely with that theory, for that may be true and yet they may have no tendency to prove the theory. This is the well-settled rule."

Similar expressions could be multiplied indefinitely. *Chicago & E. I. R. Co. v. Reilly,* 212 Ill. 506; *Grant v. Pennsylvania & N. Y. Canal & R. Co.,* 133 N. Y. 657; *Standard Oil Co. v. Industrial Commission,* 322 Ill. 524; *Jersey Ice Cream Co. v. Industrial Commission,* 309 Ill. 187; *Ira J. Mix Dairy Co. v. Industrial Commission,* 308 Ill. 549; *Ryan v. Industrial Commission,* 329 Ill. 209; *Libby, McNeill & Libby v. Industrial Commission,* 326 Ill. 293; *Atlas Brewing Co. v. Industrial Commission,* 314 Ill. 196.

This is consistent with the rule which places the burden on the plaintiff of proving liability. He must prove that the injuries were in fact, or with reasonable probability, caused by the alleged negligence of defendant and not leave it to a jury to speculate between this and another adequate cause equally probable but unconnected with the defendant. Where the evidence is reasonably consistent with two hypotheses, one of which imposes liability and the other does not, the plaintiff has failed to prove his case by the required preponderance of the evidence.

It is said that the character of the burns on the body of plaintiff indicated that she was pressed or held by the crowd against the burning partition. There could be no reasonable inference of this fact from the character of the burns. The sister of Miss Hollis said that on her coat were two bars or lines of burns about four inches apart. There was no evidence that there were any bars so spaced in the partition, and even if there were, the burns could have been inflicted by heated bars, directly caused by the lightning stroke, rather than by the secondary fire caused by the electrical current through the trolley pole.

Upon the entire record we have little difficulty in arriving at the conclusion that there was no evidence to go to the jury from which there could be any reasonable inference that the plaintiff was burned because of the overcrowded condition of the car which prevented

her escape from the burning partition, rather than because of the direct and instantaneous result of the stroke of lightning. Indeed, were we permitted to weigh the facts, we would conclude that the greater probabilities are that she was burned from the latter cause. Where the facts in evidence point to only one probable explanation of an occurrence, a jury should not be asked to guess upon a thin chance that facts not in evidence might show a possible different explanation.

Respective counsel have argued completely various angles of the case in briefs which are models of what briefs should be. We have noted only the point which seems to us decisive.

For the reasons indicated we hold that the peremptory instruction of the trial court was proper and the judgment is affirmed.

*Affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.