(No. 19617.—

THE REPUBLIC BOX COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CORA WILLIAMS *et al.* Plaintiffs in Error.)

*Opinion filed October 19, 1929.*

AUGUSTINE J. BOWE, and WILLIAM J. BOWE, for plaintiffs in error.

JOHN A. BLOOMINGSTON, and JAMES A. TRACY, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This is a writ of error to review the judgment of the circuit court of Cook county setting aside an award of the Industrial Commission to Cora Williams, Robert and James Williams, widow and children of Oscar Williams, deceased. On June 2, 1926, plaintiffs in error filed an application for adjustment of a claim with the Industrial Commission, claiming that on October 20, 1925, Oscar Williams, deceased, while in the course of his employment with defendant in error, ran a sliver into his hand, from which an infection followed, causing his death on May 19, 1926. The arbitrator recommended that no award be made. On review the Industrial Commission awarded compensation. The circuit court reversed the commission and remanded the cause for further hearing on the question of the causal connection between the death of the deceased and the accident. On rehearing an award was re-entered by the commission and another review sought by *certiorari* in the circuit court. On this hearing the court set aside the award on the ground that the records did not show the happening of an accident. .

It appears from the records of the Industrial Commission that there was introduced in evidence a preliminary report made to the commission by the General Accident Fire and Life Assurance Corporation, setting out the date of an accident to deceased, description of the employee, describing the accident as having happened while the deceased was handling lumber, and that he claimed to have run a sliver into his left hand. There was also introduced in

evidence before the arbitrator and commission a final report of this assurance corporation on such accident, showing payment of $54.60 as compensation in full for the accident. This was the only evidence that an accident to deceased occurred.

The record here presents two questions: (1) Whether the death of the deceased is shown to have been caused by the accident claimed to have occurred; and (2) whether the report of the insurance company to the Industrial Commission is competent evidence and may be taken as *prima facie* evidence of the occurrence of the accident.

The alleged injury occurred on October 20, 1925. Deceased died on May 19, 1926, some seven months later. On behalf of the plaintiffs in error the evidence of causal connection between the death and the accident consisted of the testimony of certain physicians and relatives of the deceased, with the latter of whom he had been living. It was stipulated that the deceased worked for the defendant in error from August 31, 1925, to and including October 22, 1925, and then from November 16, 1925, to December 4, 1925, when he ceased working for the reason that defendant in error had no further employment for him. He again applied for work in May, 1926, but was informed the company had no employment for him.

Mary Vance testified that she was a relative of the deceased by marriage; that deceased roomed with her for some time and that one night she noticed a swelling in his hand and that later she took him to Dr. Spaulding, and after a while Dr. Spaulding told him to go back to work; that after he went back to work the swelling went down and out of his hand but that it was swollen for about three months.

Bessie Montgomery testified that she is a daughter of Mary Vance and that she one morning noticed the hand of deceased bandaged up; that she did not know how long it was kept that way but that it must have been about seven

or eight months; that the deceased and her mother moved away from her house in October, 1925; that she did not know when the bandage was taken off.

William Hornberg testified that he was foreman of the Republic Box Company, and that deceased, up to and including the day on which he first ceased working for the company, appeared to be all right; that he was off work for a while and then came back and worked right along; that he saw him again about ten days before he died, when he came looking for a job, and that he at that time looked all right to him.

Dr. Joseph Schowalter testified for plaintiffs in error that he examined deceased on December 11, 1925, about two months after the alleged accident, and found the back of the hand was swollen. At the base of the little finger there was an abrasion, from which pus was escaping. He testified that the infection had been in progress possibly a week or ten days but hardly longer. He testified that he was unable to get a history of the injury because Williams was very indefinite in his answers to the witness' questions, and that in his opinion the condition he found should have cleared up in ten days, as there was no gland involvement of the elbow or the axilla. When questioned as to what he meant by saying that Williams was indefinite in his answers to his questions, he stated that the man could not tell him how he got the infection or give him any definite cause of it.

Dr. Jacob Goodman, coroner's physician of Cook county, called by plaintiffs in error, testified that on May 20 he performed a post-mortem on the body of the deceased and diagnosed the cause of death as chronic myocarditis, or heart trouble, and fatty degeneration of the liver. He testified that he found no evidence of any septicemia or pus infection and found no evidence of infection of any character in his hands, arms or legs. He testified that chronic myocarditis means an old, worn-out heart, and usually

comes from tubercular, syphilitic infection or other disease. He stated it as his opinion that no trauma or injury to the hand, septicemia or blood-poisoning played any part in the man's death.

Dr. Frank Baylor testified for plaintiffs in error that he examined deceased on December 12; that he found an infected abrasion over the back of the hand about the size of a split pea; that there was no glandular infection; that the wound healed rapidly, and that it looked to him like a carbuncle or hair follicle infection. He testified that he treated him until December 23, 1925, when, as far as he could see, the hand was healed and he was able to go back to work.

Dr. David Spaulding testified for plaintiffs in error that he first examined the deceased October or November, 1925, and made an incision in the back of his hand and did not find any sliver in it. Dr. Nathaniel H. Adams, also called by plaintiffs in error, testified that he examined the deceased on March 29, 1926. He described him as a weak man, with a good deal of glandular swelling in the left axilla and in the side of the neck. He was having a good deal of trouble in breathing, his pulse was weak and he had trouble in sitting in the chair. He was then a sick man and witness told him to go to the Cook County Hospital. He does not testify to any infection of the hand at that time, except that there had been some treatment to the thumb of one of his hands, but that the inflammation had subsided and the evidence of infection had passed out of the thumb.

The testimony of these witnesses comprised all of the evidence of plaintiffs in error before the arbitrator on the question of causal connection between the death and injury.

Defendant in error presented the testimony of Dr. Robert Hall Babcock, who testified from hypothetical questions that in his opinion there was no relation between the alleged

accident and the death of the deceased, and gave as his reason that such a cause would not have produced myocarditis but would have produced endocarditis, and that the fatty degeneration of the liver is not a symptom of straphlococcus infection. He also testified that if the man was discharged in December, 1925, without gland involvement and that in March, 1926, he had a gland involvement there could be no connection between such gland involvement and the accident, for the reason that it does not after so long a time follow a local infection which has been healed but that it would have appeared in two weeks. He further testified that myocarditis is a disease of slow progress and that one could have it for years without knowing it.

On review before the commission plaintiffs in error introduced the testimony of Dr. Joseph M. Patton, who testified in answer to hypothetical questions. He stated that there were a number of causes for myocarditis; that there could be a causal relationship between the accident and the death of the deceased; that he had never seen the deceased or looked at his heart; that if he had he would have been in better position to tell what he died of; that as there was considerable time after the injury to the hand and the death nobody could have told much about his heart by physical examination.

This was all of the evidence on the first hearing before the arbitrator and commission on the question of causal connection between the death and the injury. On remandment to the commission by the circuit court Dr. Nathaniel Adams again testified for the plaintiffs in error that in his opinion the fact that deceased was examined on December 23, 1925, and no myocarditis found, showed that it was not an old disease, although a doctor can make an examination of a person and not determine any myocarditis. He testified that there were probably 250 reasons why a person can die of myocarditis; that it could have been caused, and probably was caused, by the alleged acci-

dent; that when he saw the deceased in March there was a cut on the back of his hand; that the witness did not know the cause of it. He further testified that he always took a history when a patient came to him for treatment, and if in the history he found the accident to be an industrial one he sent him to his employer for treatment, and that in this case he gave the deceased a card to the county hospital. This constituted all the evidence on the question of causal connection between the death of Williams and the accident, which plaintiffs in error claim occurred on October 20, 1925.

To sustain the award for compensation entered there must be evidence in the record showing that the death was traceable to an injury which arose out of and in the course of the employment of the deceased. (*Illinois Bell Telephone Co.* v. *Industrial Com.* 325 Ill. 102; *Ideal Fuel Co.* v. *Industrial Com.* 298 id. 463.) An award may not be based upon imagination, speculation or conjecture, but must be based upon facts established by a preponderance of the evidence. (*Libby, McNeill & Libby* v. *Industrial Com.* 326 Ill. 293; *Paradise Coal Co.* v. *Industrial Com.* 324 id. 420; *Camp Spring Mill Co.* v. *Industrial Com.* 302 id. 136; *Peterson & Co.* v. *Industrial Board,* 281 id. 326.) In this case, though it be assumed that an accident to the hand of the deceased occurred on October 20, 1925, which arose out of and in the course of the employment of the deceased with defendant in error, there is no evidence that that injury caused or contributed to the death of the deceased. The only expert testimony which could be said to in any way tend to establish causal connection between the death and the injury was the statement that myocarditis might have been caused by this infection to the hand. There is no evidence here that in any way tends to show that it was so caused. The deceased died of myocarditis seven months after the alleged injury, and, as the evidence shows, more than six months after infection to his hand had entirely

healed without glandular involvement. It is also shown that myocarditis may arise from one of many causes. To say that it arose from an infection to the hand received on October 20, 1925, in the face of the testimony that the hand was completely cured of the infection by November 16, when the deceased returned to work, would be to base the cause of death on mere conjecture. This the commission is not permitted to do. The award is without foundation in the evidence.

Since for this reason the award cannot be sustained, it is not necessary to determine the admissibility of the report of the insurance company to the Industrial Commission as evidence of the occurrence of the accident.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*