**Mary EUSON, Administrator of the Estate of George M. Euson, Deceased, Plaintiff-Appellant**

v.

**Gerald H. STARRETT, Defendant-Appellee.**

**Gerald H. STARRETT, a Minor, by John Starrett, His Father and Next Friend, Defendant-Appellant**

v.

**Mary EUSON, Administrator of the Estate of George M. Euson, Deceased, Plaintiff-Appellee.**

**Nos. 12754, 12755.**

United States Court of Appeals
Seventh Circuit.

Feb. 17, 1960.

Rehearing Denied May 11, 1960.

74

James C. Wollrab, Bloomington, Ill., Earl S. Hodges, Springfield, Ill., for Euson.

Frederick H. Stone, Springfield, Ill., Richard W. Velde, Havana, Ill., Gillespie, Burke & Gillespie, Springfield, Ill., Louis F. Gillespie, George B. Gillespie, Springfield, Ill., of counsel, for Starrett.

Before DUFFY and CASTLE, Circuit Judges, and SWYGERT, District Judge.

SWYGERT, District Judge.

This is an action for wrongful death and property damage, based upon diversity jurisdiction, brought by plaintiff as administrator of her deceased husband's estate. The deceased, George M. Euson, was fatally injured in an automobile accident as was the passenger in his car. Defendant, the other driver, counterclaimed for damages because of bodily injuries received in the accident. These appeals deal with the granting of a new trial following a jury verdict for plaintiff and the subsequent direction of verdicts of non-liability against both parties at the second trial.

The accident occurred on the outskirts of the village of Manito, Illinois, at about 11:00 a.m. on June 20, 1956. George M. Euson, a 36-year-old resident of Frankfort, Indiana, was driving a Buick automobile north on a road, approximately 18 feet wide, known as the Manito blacktop, leading into Manito from the south. Defendant Gerald Starrett, age 16, a resident of Manito, was driving his father's Chevrolet automobile west on Pine Street, a gravel road which forms a "T" intersection with the Manito blacktop at the southwest edge of the village. The Manito blacktop is a preferential street at that point. There was a stop sign on the east side of the street warning drivers approaching on Pine Street. The accident occurred when the two vehicles collided in or near the intersection.

The first trial resulted in a jury verdict for plaintiff. The trial judge granted a new trial, stating as his reason that "the evidence in the case warranted a finding that George M. Euson was not in the exercise of due care at the time of this most unfortunate occurrence."

At the second trial, before another judge, substantially the same evidence was adduced except that the court excluded the testimony of two witnesses relating to the speed of the Buick at varying distances from the place of the accident. The court directed verdicts of non-liability as to both claims and these appeals followed.

During the course of the first trial plaintiff objected to testimony relating to the Buick automobile's speed on the ground that such testimony related to speed at points remote from the place of the accident. The objection was overruled. One witness was then permitted to testify that the Buick passed him three-quarters of a mile south of Manito at an estimated speed of 80 to 85 miles per hour. This witness also testified that he lost sight of the Buick 400 feet from the Pine Street intersection; later he placed this distance at 1000 feet. A

motion to strike the testimony was denied, the court stating "it creates a jury question." Another witness then testified that he likewise was passed by the Buick about a mile and a half from Manito and estimated its speed at 100 miles per hour.

The defendant was precluded by Illinois law from testifying. There were no other eyewitnesses to the collision. One witness, a 14-year-old boy who was north of the intersection, testified he saw defendant's car turn onto the blacktop and head south, and that from the top of the hill approximately 400 feet south to the intersection he saw no approaching traffic; that his attention was momentarily diverted, but that upon hearing the crash he saw the Starrett car resting on the east side of the road and the Buick near a barricade on the west side. Another witness testified that from her home immediately west of the intersection she saw the defendant driving toward the blacktop; that she looked elsewhere until she heard the crash and then saw the two cars in motion in the south portion of the intersection.

Other witnesses testified about the position of the cars after the accident, the location of two gouge marks in the blacktop at or near the intersection, and the location of the debris caused by the collision.

Photographs introduced in evidence show two gouge marks in the blacktop. One appears in the southeast portion of the intersection and the other in the southbound lane of traffic. An Illinois State Police trooper testified that the gouge marks in the southbound lane were 45–50 feet south of the intersection. He also testified that debris was in the general area of the intersection to the south and that it was in both lanes of the highway. A school-bus driver who came upon the scene shortly after the accident testified that there was little debris and that was on the east side of the highway. He also testified that he could remember no gouge marks on the west side of the highway. He said he left before the wrecked cars were towed away. Another witness testified that he visited the scene immediately after the collision and that he saw a small amount of debris in the east lane and close to the center of the highway.

At the first trial a businessman of Springfield, Illinois, who was an acquaintance of the deceased for some years, testified that George M. Euson was a careful driver; similar testimony was given by a Catholic priest during the second trial.

The essential question presented by these appeals is whether the district court was in error in directing verdicts at the conclusion of the evidence at the second trial. We must decide whether there is any evidence in the record which would support a finding for the party against whom the verdict was directed. Heller v. Select Lake City Theatre Operating Co., 7 Cir., 1951, 157 F.2d 649. Preponderance of the evidence and credibility of the witnesses cannot be considered.

It is uncontroverted that the defendant approached the Manito blacktop, a preferential road, from the east on Pine Street, where there was a stop sign. Section 167(b) of Chapter 95½, Illinois Rev.Stat., requires the driver of a vehicle approaching a preferential road to yield the right-of-way to vehicles on the through highway which are approaching so closely as to constitute an immediate hazard. Mere stopping is not sufficient; the driver must not proceed without determining that he can do so safely. Thomas v. Buchanan, 357 Ill. 270, 192 N.E. 215; Hering v. Hilton, 12 Ill.2d 559, 147 N.E.2d 311. Violation of this statute by the defendant would be negligence.

To answer the question whether defendant violated the statute, the movement and location of the cars immediately before the collision must be determined. In this case we have only circumstantial evidence upon which to make that determination. Circumstantial evidence may, of course, be utilized, but it

is essential that it not be susceptible of inconsistent inferences. Otherwise, the conclusion becomes a mere guess. Authority for this proposition is abundant. In Peterson & Co. v. Industrial Board, 281 Ill. 326, 117 N.E. 1033, 1035, the court said:

"Liability cannot rest upon imagination, speculation, or conjecture, upon a choice between two views equally compatible with the evidence, but must be based upon facts established by evidence fairly tending to prove them."

The rule was expressed as follows in Kelley v. Public Service Co., 300 Ill.App. 354, 21 N.E.2d 43, 46:

"Proof of a mere possibility is not sufficient. A theory cannot be said to be established by circumstantial evidence unless the facts are of such a nature and so related, as to make it the only conclusion that could reasonably be drawn. It cannot be said one fact can be inferred, when the existence of another inconsistent fact can be drawn with equal certainty."

Referring to the burden of establishing negligence, the court in Paul Harris Furniture Co. v. Morse, 7 Ill.App.2d 452, 130 N.E.2d 16, 24, said:

" * * * This burden can be sustained by circumstantial evidence, but it is not sufficient to prove a mere possibility.

"In Celner v. Prather, 301 Ill.App. 224, at page 227, 22 N.E.2d 397, at page 398, the court said: 'Proof of a mere possibility is not sufficient. A theory can not be said to be established by circumstantial evidence unless the facts are of such a nature and so related, as to make it the only conclusion that could reasonably be drawn. It cannot be said one fact can be inferred, when the existence of another inconsistent fact can be drawn with equal certainty.' In Coulson v. Discerns, 329 Ill.App. 28, at page 32, 66 N.E.2d 728, at page 730, the court says: 'A fact cannot be established by circumstantial evidence unless the circumstances are of a nature and so related to each other that it is the only conclusion that can be drawn therefrom, and mere conjecture, guess or suspicion is insufficient.' To the same effect is Ohio Bldg. Safety Vault Co. v. Industrial Board, 277 Ill. 96, 115 N.E. 149, and O'Connor v. Aluminum Ore Co., 224 Ill.App. 613."

■ There were no eyewitnesses to this collision; hence, no one could testify that the defendant entered the intersection in violation of the statute. The fourteen-year-old boy saw the defendant's car just as it pulled onto the blacktop. No other cars were then in sight. However, the boy could see only to the top of the hill, approximately 400 feet south of the intersection, and his view was partially blocked by trees. The witness whose house is located immediately west of the intersection saw defendant's car on Pine Street when it was about a block east of the intersection; she looked away, however, and did not look up until after the crash, at which time the cars were in motion in the south portion of the intersection.

The physical facts observed after the accident show that defendant's car came to rest on the east side of the blacktop just north of the intersection, facing north, while the deceased's car came to rest on the west side of the blacktop facing west in the middle of the intersection, near a barricade which prevented traffic on Pine Street from continuing west of the blacktop. The damage to the two cars was confined almost entirely to their front ends. The photographs taken shortly after the accident show clearly that there were two gouge marks in the blacktop, one in the northbound lane and one in the southbound lane. The debris appeared to begin at the gouge mark in the southbound lane and was scattered in both lanes north to the other gouge mark.

When the testimony of the two above-mentioned witnesses and the physical facts are considered, the most that can

be said is that the defendant might possibly have entered the highway either without stopping or before it was safe for him to continue after stopping, and that the collision occurred at or near the first gouge mark in the intersection on the east side of the highway. But it could be inferred with equal "certainty" that the defendant had already entered the highway and was in his lane before the car driven by the deceased appeared at the top of the hill, and that the collision occurred at or near the second gouge mark south of the intersection in the southbound lane. The evidence is as susceptible of the one inference as of the other.

With regard to the question of negligence of the deceased, George M. Euson, we must consider first the testimony of the two witnesses relating to speed, which testimony was admitted at the first trial and excluded at the second. One witness testified as to the Buick's speed one and one-half miles from the point of collision and the other witness as to its speed three-quarters of a mile away. The latter witness testified that he could not say whether the Buick's speed increased, decreased or remained constant after the car had traveled four hundred feet beyond the point where it passed his truck. This evidence, we think, dealt with the speed of the Buick at distances too remote from the place of collision to have any probative value and hence, was inadmissible in the absence of additional evidence showing continuity of speed as the car approached the Pine Street intersection. No such additional evidence was submitted. We hold, therefore, that the trial judge at the second trial correctly excluded the testimony of the two witnesses relating to the speed of the Buick. Guffey v. Gale, 332 Ill.App. 207, 74 N.E.2d 730; Rzeszewski v. Barth, 324 Ill.App. 345, 58 N.E.2d 269, 276; Hanck v. Ruan Transp. Corp., 3 Ill.App.2d 372, 122 N.E. 2d 445, 449.

Exclusive of the testimony relating to speed, we have the identical circumstantial evidence upon which to determine the question of the deceased's negligence that we had in determining whether defendant was negligent. The evidence shows that the collision possibly occurred at or near the gouge mark south of the intersection, in defendant's lane of traffic. On the other hand, the evidence is equally susceptible of the inference that the collision occurred at or near the gouge mark in the intersection, in the deceased's lane of traffic. A finding of negligence is as readily supported by the evidence as is a finding of non-negligence.

In sum, we have a group of circumstances which point to several possible inferences. The extent of the defendant's vision to the south was limited to the crest of the hill approximately 400 feet from the intersection; likewise, the deceased could not see the intersection until within approximately the same distance. There were no posted speed restrictions on the blacktop and no showing was made that the deceased had driven before on this road. Together with the other circumstantial evidence these facts imply the possibility that this was a pure accident. On the other hand, there is the possibility that either driver was or both were at fault. The conflict lies not in the evidence but in the several inferences that can be drawn from it. In this situation the jury could only guess or speculate as to who, if any one, was negligent. Conjecture, of course, cannot form the basis of legal liability.

We hold, accordingly, that the trial judge at the second trial was correct in directing verdicts against both parties. In view of this determination we obviously need not consider the other contested issue raised by appellant that the trial judge at the first trial abused his discretion in granting a new trial.

The judgments are affirmed.